# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| FLOWERS TITLE COMPANIES LLC, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> SCOTT BESSENT, in his official capacity § <br> as U.S. Secretary of Treasury; U.S. § <br> DEPARTMENT OF TREASURY; THE § <br> FINANCIAL CRIMES ENFORCEMENT § <br> NETWORK; § <br> § <br> Defendants. § <br> § | Civil Action No. |

### DECLARATION OF CELIA C. FLOWERS

I, Celia C. Flowers, declare that:

1. I make this statement of my own personal knowledge and if called to testify, could and would testify truthfully thereto.

2. I am over 18 years of age and a resident of Tyler, Texas. I am a co-owner of Flowers Title Companies, LLC. I run the company with the aid of my daughter who is my co-owner.

3. In addition to my role at Flowers Title Companies LLC, I am a senior partner at Flowers Davis PLLC. I am certified by the Texas Board of Legal Specialization in residential estate law.

4. Flowers Title Companies, LLC is a title agent incorporated in the State of Texas, and headquartered in Tyler, Texas. We do business under the name "East Texas Title Companies."

5. We are licensed to facilitate closings in 87 of Texas' 254 counties.

6. We are not a federally insured financial institution.

1

7. Each year, East Texas Title Companies facilitates or provides information for thousands of real estate closings.

8. We commonly facilitate real estate transfers between Texas residents. That includes transactions between Texas residents using Texas financial institutions.

9. We commonly close or settle non-financed transfers of residential property to legal entities like an LLC or another incorporated entity or trust.

10. Non-financed transfers are commonly referred to as "cash deals" because the buyer has liquid assets available to close without need of obtaining financing.

11. In my experience, there is nothing unusual about a buyer paying for real property with his or her own money. Buyers who can afford to purchase property without taking out a loan may prefer cash deals for many legitimate reasons. Most obviously, they can save thousands of dollars in lending costs and interest payments if they pay out of their own savings, or with other liquid assets.

12. High net earners, individuals with inherited wealth, and those who have recently sold another property commonly invest in real estate and often have assets sufficient to cover the cost outright.

13. In my experience, the buyer in a non-financed real estate transaction is almost always paying for the property with money from a savings account at a bank or credit union that is required to maintain an anti-money-laundering program.

14. We have never encountered a situation in which a buyer seeks to pay with physical cash over $1,500.00—i.e., without that money being transferred from a financial institution that is required to maintain an anti-money-laundering program.

15. I can also say that, in my experience, there is nothing unusual about an investor creating a limited liability corporation, or another incorporated entity, to acquire and hold real estate.

16. Incorporation is common in the real estate business because it minimizes legal risks and serves legitimate tax planning purposes.

17. Likewise, there are legitimate estate planning reasons for a family with wealth to transfer real property to a trust for the benefit of trustees.

18. Since 2016, the Financial Crimes Enforcement Network ("FinCEN") has required our company to gather and report information on certain non-financed transfers of residential property under FinCEN's "geographic targeting orders" ("GTOs"). These reporting requirements impose burdens on our staff, not the least of which is they are required to gather potentially sensitive, private information not relevant to facilitating the closing of a deal under state or local law.

19. FinCEN's preexisting orders require East Texas Title to gather and report information on non-financed transactions in six of the counties we operate in. This took time, energy and resources to ensure full compliance.

20. Our company is now taking steps to ensure compliance in case FinCen's new rule, requiring mandatory reporting for most non-financed transfers of residential property ("Final Rule"), goes into effect in December, 2025.

3

21. This requires time, energy and money that would otherwise be directed to more productive business purposes. East Texas Title employees have already invested significant time reviewing the Final Rule and devising plans to ensure compliance. For example, we have spent time reviewing FinCEN's draft Real Estate Report form.

22. Under the Final Rule, East Texas Title will be responsible for filing Real Estate Reports because the company, or our employees, is commonly "listed as the agent on the closing or settlement statement for the transfer" of residential property.

23. Even where East Texas Title is not officially listed as the agent on the closing or settlement statement, the company will be responsible for filing FinCen reports because our employees are routinely preparing the closing or settlement statements for the transfer of residential properties, and because our employees are commonly filing deeds, or other instruments transferring ownership, in the local county recorder's office.

24. East Texas Title has a dedicated compliance officer whose primary duties include ensuring general compliance with state and local law; however, the officer must now devote a substantial portion of her time to ensuring compliance with FinCEN's reporting requirements.

25. Our compliance officer has expended significant time and energy working to ensure compliance with FinCEN's preexisting reporting requirements. Based on that experience, we have every reason to expect that the Final Rule will prove burdensome and time-consuming.

26. Under the Final Rule, our compliance officer will have to train and continuously oversee employees who are interfacing with clients to ensure that they are appropriately gathering information on reportable transactions.

27. Our employees will have to gather information and make a determination with each transaction as to whether it is a reportable transaction or not.

28. If they determine that it is a reportable transaction, they must gather all categories of required information under the Final Rule—even where such inquiries may seem cumbersome, unnecessary or invasive to our clients.

29. East Texas Title must compensate its hourly employees for the time they spend gathering required information, preparing and filing Real Estate Reports, and in managing required document retention policies.

30. East Texas Title brings this suit because it objects to being conscripted into performing government surveillance on its clients. We object to FinCEN's demand that our company must hand over its records without a warrant.

31. East Texas Title also brings this suit because we object to being compelled to collect information beyond what it is necessary to facilitate real estate closings in compliance with state and local law—and because we believe FinCEN promulgated the Final Rule in violation of the separation of powers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 4/10/2025 at Tyler, Texas.

6

DocuSigned by:

*Celia Flowers*

20FAE561A37E434...

CELIA C. FLOWERS