## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FLOWERS TITLE COMPANIES LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 6:25-cv-00127-JDK |
| SCOTT BESSENT, in his official capacity | § | |
| as U.S. Secretary of Treasury; U.S. | § | |
| DEPARTMENT OF TREASURY; and THE | § | |
| FINANCIAL CRIMES ENFORCEMENT | § | |
| NETWORK, | § | |
| | § | |
| Defendants. | § | |

## AMENDED COMPLAINT

## INTRODUCTION

1.    Flowers Title Companies LLC (d/b/a "East Texas Title Companies") facilitates, or provides information for, thousands of real estate closings each year. *See* Exhibit (Ex.) A, Declaration of Celia Flowers ("Flowers Decl.") ¶¶ 4, 7. Plaintiff's work on those transactions has long been regulated by state and local law. They were never subject to federal reporting requirements until recent orders from the Financial Crimes Enforcement Network ("FinCEN").

2.    FinCEN has finalized a new rule that requires title companies to collect information and report on many cumbersome details pertaining to non-financed transfers of residential property—including sensitive personal information that they must now gather from clients. *See* Anti-Money Laundering Regulations for Residential Real Estate Transfers, 89 Fed. Reg. 70258 (Aug. 29, 2024) (to be codified at 31 C.F.R. ch. X) ("Final Rule").

3.      FinCEN claims authority to mandate the collection and reporting of this
information because the federal Bank Secrecy Act[1] authorizes reporting rules for "any
suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C.
§ 5318(g)(1).

4.      But there is nothing inherently suspicious about a buyer using his or
her own money. Buyers who can afford to purchase property without taking out a
loan often prefer to do so for many legitimate reasons. Ex. A, Flowers Decl. ¶ 11. Most
obviously, they can save thousands of dollars in lending costs and interest payments
if they pay out of their own savings, or other liquid assets. *Id.*

5.      Nonetheless, the Final Rule deems commonplace real estate
transactions inherently "suspicious" because it is *conceivable* the government *might*
glean information of relevance to *possible* statutory or regulatory violations if title
companies are required to ***systematically report the details of all such***
***transactions***. Final Rule, 89 Fed. Reg. at 70260.

6.      But there is no limit to what sort of consumer transactions FinCEN
might require reporting on if the agency can compel collection and reporting of
sensitive consumer information simply because systematic reporting *might* yield
useful information.

---

[1] Subchapter II of chapter 53 of title 31 of the United States Code, along with titles I
and II of Pub. L. No. 91-508 (the Fair Credit Reporting Act), are popularly known as
the "Bank Secrecy Act." *See* Short Title note set out under section 1951 of Title 12,
Banks and Banking; *see also* Pub. L. No. 116-283, Div. F (Anti-Money Laundering
Act of 2020), § 6003(1).

7.     East Texas Title files this lawsuit because the Final Rule was promulgated in violation of separation of powers principles. Ex. A, Flowers Decl. ¶ 31. The Rule is ultra vires. And if it is not, there is a constitutional problem because FinCEN's claimed statutory authority amounts to a roving power to require disclosures on any consumer transaction the agency deems fit.

8.     East Texas Title also sues because it objects to being conscripted into performing government surveillance on its clients. *Id.* ¶ 30. The company objects to FinCEN's demand that it must hand over its records without a warrant.

9.     Finally, the company brings this suit because it objects to being compelled to collect information beyond what is necessary to facilitate real estate closings in compliance with state and local law. *Id.* ¶ 31.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 and 5 U.S.C. §§ 702, 706.

11.    The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C §§ 2201 and 2202, 28 U.S.C. § 1361, and to vacate unlawful agency action under 5 U.S.C. § 706.

12.    Venue is proper under 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because the defendants are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this District. *See also* 5 U.S.C. § 703

(venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

## PARTIES

13.     Plaintiff Flowers Title Companies LLC is a title agent incorporated in the State of Texas, and headquartered in Tyler, Texas. Ex. A, Flowers Decl. ¶ 4. The company is licensed to facilitate closings in 87 of Texas' 254 counties. *Id*. ¶ 5. It does business under the name "East Texas Title Companies." *Id*. ¶ 4.

14.     Defendant Scott Bessent is the United States Secretary of Treasury. He is sued in his official capacity.

15.     Defendant U.S. Department of Treasury is an agency of the United States government, under the direction and control of the United States Secretary of Treasury.

16.     Defendant Financial Crimes Enforcement Network is a sub-agency within the U.S. Department of Treasury, under the direction and control of the United States Secretary of Treasury.

## GENERAL ALLEGATIONS

### *FinCEN Imposes a Rule Requiring Federal Reporting on Non-Financed Real Estate Closings*

17.     In 2016, FinCEN began issuing "geographic targeting orders" ("GTOs") that required East Texas Title "to file reports and maintain records concerning non-financed purchases of residential real estate . . . by certain legal entities in select metropolitan areas of the United States." 89 Fed. Reg. at 70259–60. *See* Ex. A, Flowers Decl. ¶ 18.

4

18.    Thereafter, FinCEN expanded the geographic scope of its reporting requirements in successive GTOs. Anti-Money Laundering Regulations for Residential Real Estate Transfers, 89 Fed. Reg. 12424, 12428 (Feb. 16, 2024) ("Proposed Rule").

19.    Now FinCEN is giving nationwide scope to its real estate reporting requirements under the Final Rule. Final Rule, 89 Fed. Reg. at 70258.

20.    The purpose is to help law enforcement gather information when investigating "possible violation[s] of law or regulation." 31 U.S.C. § 5318(g)(1). *See* Final Rule, 89 Fed. Reg. at 70260.

21.    FinCEN maintains collected information in a database that is accessible to federal, state, and local law enforcement. *Id.*

22.    FinCEN may also share collected information with federal agencies investigating potential civil regulatory violations.

23.    FinCEN claims that its GTOs were successful in identifying the supposed risks of non-financed real estate transactions. FinCEN cited this as a policy justification when proposing to expand its reporting requirements nationwide. *Id.*

24.    In outlining the supposed "benefits" of expanding these reporting requirements, FinCEN explained that the agency had "regularly receive[d] feedback from law enforcement partners that they use[d] the information [collected] to generate new investigative leads, identify new and related subjects in ongoing cases, and [to] support prosecution and asset forfeiture efforts." *Id.*

25. But for East Texas Title, FinCEN's GTO reporting requirements proved burdensome because it required gathering of potentially sensitive and private information, which was not relevant to facilitating closings under state or local law. *See* Ex. A, Flowers Decl. ¶ 18.

26. FinCEN's GTOs required East Texas Title to gather and report information on non-financed transactions in six of the counties it operates in. *Id.* ¶ 19. This took time, energy, and resources to ensure full compliance. *Id.*

27. FinCEN recognized that its existing GTOs had imposed regulatory burdens. Final Rule, 89 Fed. Reg at 70258. Nonetheless, FinCEN concluded that the potential benefits in informational gains to government outweighed concerns over adding greater regulatory burdens in the Final Rule. *Id.*

28. FinCEN published its decision finalizing this rule on August 29, 2024, and set an effective date of December 1, 2025. *Id.*

### *FinCEN's Claim to Discretionary Rulemaking Authority*

29. FinCEN asserts statutory authority for the Final Rule under a provision of the Bank Secrecy Act that provides: "The Secretary [of Treasury] may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1) ("SAR Authority").[2] *See* Final Rule, 89 Fed. Reg. at 70259.

---

[2] FinCEN refers to reports required under this authority as "suspicious activity reports" or "SARs." Final Rule, 89 Fed. Reg. at 70258.

30.    FinCEN also cited 31 U.S.C. § 5318(a)(2), which provides that the Secretary—if he chooses—"may . . . require a class of domestic financial institutions . . . [to] collect[] and report[] . . . information as the Secretary of the Treasury may prescribe by regulation . . . to guard against money laundering, the financing of terrorism, or other forms of illicit finance." *Id.* at 70259 n.11.

31.    The Secretary of Treasury has subdelegated his rulemaking authority under the Bank Secrecy Act to the Director of FinCEN. And FinCEN relied on that delegated authority in promulgating the Final Rule. *Id.* at 70258.

### *Financial Institutions Subject to FinCEN's Discretionary Rulemaking Authority*

32.    The Bank Secrecy Act enumerates twenty-six types of entities deemed "financial institutions" subject to reporting requirements that the Secretary may prescribe by regulation. 31 U.S.C. § 5312.

33.    The statute's enumerated list includes entities like "insured bank[s][,]" "trust compan[ies][,]" "credit union[s][,]" "investment banker[s][,]" "business[es] engaged in the exchange of currency[,]" and any "operator of a credit card system[.]" *Id.* § 5312(a)(2)(A)–(C); (I)–(J); (L).

34.    The enumerated list includes various other entities like "thrift institution[s][,]" "pawnbroker[s][,]" and "travel agenc[ies]." *Id.* § 5312(a)(2)(F); (O); (Q). Likewise, "persons involved in real estate closings and settlements" are included. *Id.* § 5312(a)(2)(U).

35.    The statute also delegates discretionary authority for the Secretary to designate "any other business" as a "financial institution" subject to the Secretary's

reporting requirements, if the Secretary believes its "cash transactions have a high degree of usefulness in criminal, tax, or regulatory matters." *Id*. § 5312(a)(2)(Z).

### *FinCen's Discretionary Authority to Add to or Detract From Statutory Requirements*

36.     Congress imposed a statutory requirement that financial institutions "shall establish anti-money laundering and countering the financing of terrorism programs . . . ." *Id*. § 5318(h). FinCEN refers to these as "AML/CFT" programs. Final Rule, 89 Fed. Reg. at 70258.

37.     By statute, a compliant program must have: (1) developed "internal policies, procedures, and controls;" (2) a designated "compliance officer;" (3) "an ongoing employee training program;" and (4) "an independent audit function to test programs." *Id*. § 5318(h)(1)(A)–(D).

38.     Congress did not otherwise speak to the substantive requirements for statutorily required AML/CFT programs. Instead, Congress delegated authority to the Secretary to "prescribe minimum standards." *Id*. § 5318(h)(2).

39.     The Secretary also has discretion to exempt financial institutions from any of the requirements of the Bank Secrecy Act whenever he deems an exemption "appropriate." *Id*. § 5318(a)(7).

40.     In 2002 FinCEN exercised this authority (sub-delegated from the Secretary) to exempt "persons involved in real estate closings and settlements" from the requirement to maintain AML/CFT programs. Proposed Rule, 89 Fed. Reg. at 12427.

41.    But Congress has given the Secretary (and FinCEN operating under sub-delegated authority) total discretion to revoke this exemption at any point. 31 U.S.C. § 5318(a)(5).

### *FinCEN Imposes Reporting Requirements*

42.    Between 2016 and 2024, FinCEN issued a series of GTOs, which required "persons involved in real estate closings and settlements" to begin filing reports on certain non-financed transactions, within specified localities. Final Rule, 89 Fed. Reg. at 70259–60.

43.    FinCEN relied on the Secretary's discretionary SAR Authority for these GTOs. But FinCEN continued its exemption excusing "persons involved in real estate closings and settlements" from maintaining AML/CFT programs. *Id.*

44.    The Final Rule, published in 2024, maintains FinCEN's exemption excusing "persons involved in real estate closings and settlements" from maintaining statutorily required AML/CFT programs. *Id.* at 70276 (codifying 31 C.F.R. § 1031.320(m)(2)). But the Final Rule expands mandatory reporting requirements under the agency's discretionary SAR Authority. *Id.* at 70290–94.

### *The Final Rule Requires Granular Collection of Private Information and Burdensome Reporting*

45.    Unless an exception applies, the Final Rule requires "persons involved in real estate closings and settlements" to file reports on any "non-financed transfer to a transferee entity or transferee trust of an ownership interest in residential property." 89 Fed. Reg. at 70290 (codifying 31 C.F.R. § 1031.320(b)(1)). FinCEN refers to these as "Real Estate Reports." *Id.* at 70262.

46.   The Final Rule provides eight exemptions for otherwise "reportable transfer[s]." 89 Fed. Reg. at 70290 (codifying 31 C.F.R. § 1031.320(b)(2)) (exempting transfers pertaining to easements, transfers "resulting from the death of an individual," "incident to divorce[,]" "bankruptcy[,]" and several other, similarly narrow, exemptions).

47.   The Final Rule specifies that for each reportable transaction, the responsibility for reporting rests with "the person listed as the closing or settlement agent on the closing or settlement statement for the transfer[.]" *Id.* (codifying 31 C.F.R. § 1031.320(c)(1)).

48.   If no person is listed as the closing or settlement agent, the reporting obligation falls to "the person that prepares the closing or settlement statement for the transfer[,]" and thereafter to "the person that files with the recordation office the deed or other instrument that transfers ownership . . . ." *Id.* (codifying 31 C.F.R. § 1031.320(c)(1)(ii)–(iii)). Otherwise, the Final Rule specifies a cascading list of other responsible parties.

49.   Every Real Estate Report must include specified information about "each" individual transferor such as their full legal name, date of birth, current residential address, and a "unique identifying number" such as an "IRS TIN." *Id.* at 70291–92 (codifying 31 C.F.R. § 1031.320(f)(1)).

50.   If the transferor "is a legal entity," the report must include the incorporated entity's "full legal name," its "'doing business as' name," "street

address," and a "unique identifying number" such as an "IRS TIN." *Id*. at 70291–92 (codifying 31 C.F.R. § 1031.320(f)(2)(i)-(iv)).

51.    Real Estate Reports must also provide similar information about "each individual who is a trustee of a trust" if a trust is a transferor. *Id*. at 70291–92 (codifying 31 C.F.R. § 1031.320(f)(2)(v)).

52.    Likewise the Final Rule requires collection and reporting of information about "each transferee entity involved in a reportable transfer . . ."—such as its "[f]ull legal name;" "'doing business as' name[;]" the "street address that is [its] . . . principal place of business[;]" its IRS TIN, or an equivalent "unique identifying number" from a foreign jurisdiction. *Id*. at 70291–92 (codifying 31 C.F.R. § 1031.320(e)(1)(i)).

53.    Real Estate Reports must also include similar information about "each beneficial owner of the transferee entity[.]" *Id*. at 70291–92 (codifying 31 C.F.R. § 1031.320(e)(1)(ii)).

54.    They must further include similar information about "each signing individual," and a "[d]escription of the capacity in which the individual is authorized to act as the signing individual" on behalf of the transferee entity. *Id*. at 70291–92 (codifying 31 C.F.R. § 1031.320(e)(1)(iii)).

55.    If the individual signing on behalf of the transferee entity is acting in the "capacity of an employee, agent or partner," the report must provide information about "the individual's employer, principal, or partnership." *Id*.

56.    If the transferee is a trust, the Final Rule requires collection and reporting of similar information to that required of an incorporated transferee. *Id*. at

70291–92 (codifying 31 C.F.R. § 1031.320(e)(2)). But the rule requires additional details, such as "[d]ate the trust instrument was executed[,]" and information about whether the trust is revocable. *Id.*

57.    And the Final Rule requires reporting on the "beneficial owner" interests of any transferee trust—regardless of whether the trust was designed to keep the names of beneficial owners confidential for legitimate reasons. *Id.*

58.    Real Estate Reports must provide the street address, legal description, and closing date for the property in question.

59.    Each report must provide specified information about the payment for that property, including: "(i) [t]he amount of the payment; (ii) [t]he method by which the payment was made; (iii) [i]f the payment was paid from an account held at a financial institution and the account number; and (iv) [t]he name of the payor on any wire, check, or other type of payment if the payor is not the transferee entity or trust." *Id.* at 70292 (codifying 31 C.F.R. § 1031.320(h)).

60.    The Final Rule further requires that each report must provide information about whether the "transfer involved credit extended by a person that is not a financial institution with an obligation to maintain an anti-money laundering program and an obligation to report suspicious transactions" to FinCEN. *Id.* (codifying 31 C.F.R. § 1031.320(i)).

61.    The Final Rule requires that Real Estate Reports must be "filed electronically" either within thirty days of closing, or by the end of the month following the closing. *Id.* at 70293. (codifying 31 C.F.R. § 1031.320(k)).

62. Reporting companies are required to maintain records of any written certifications relied upon when preparing and filing Real Estate Reports. *Id.* (codifying 31 C.F.R. § 1031.320(*l*)). The Final Rule suggests that these records need only be maintained for five years. *Id.* at 70276. But the text of the codified regulation in 31 C.F.R. § 1031.320(*l*) does not include any expiration date for retention.

### *Injury to East Texas Title*

63. East Texas Title is deemed a "financial institution" subject to any reporting requirements the Secretary chooses to impose under the Bank Secrecy Act because its employees are "persons involved in real estate closings and settlements." 31 U.S.C. § 5312(U).

64. East Texas Title is responsible for filing Real Estate Reports because the company or its employees are commonly "listed as the agent on the closing or settlement statement for the transfer" of residential property. *See* Ex. A, Flowers Decl. ¶ 22.

65. Even where East Texas Title is not officially listed as the agent on the closing or settlement statement, the company is responsible for filing FinCEN reports on reportable transactions because its employees are routinely preparing the closing or settlement statements for the transfer of residential properties, and part of their job is filing with the recordation office the deed or other instrument that transfers ownership of residential property. *Id.* ¶ 23.

66. East Texas Title commonly closes or settles non-financed transfers of residential property to legal entities like an LLC or another incorporated entity or trust. *Id.* ¶ 9.

67.    The buyer in these non-financed transactions is almost always paying for the property with money from a savings account at a bank or credit union that is required to maintain an anti-money laundering program. *Id.* ¶ 13.

68.    East Texas Title has never encountered a situation in which a buyer seeks to pay with physical cash over $1,500—i.e., without that money being transferred from a financial institution that is required to maintain an anti-money-laundering program. *Id.* ¶ 14.

69.    East Texas Title must expend resources to prepare for the impending effective date on December 1, 2025. This includes time, energy, and money that would otherwise be directed to productive business purposes. *Id.* ¶¶ 20–21.

70.    East Texas Title employees have already invested significant time reviewing the Final Rule and devising plans to ensure compliance should the rule go into effect. *Id.*

71.    East Texas Title has a dedicated compliance officer whose primary duties include ensuring general compliance with state and local law; however, the company must now devote a substantial portion of her time to ensuring compliance with the Final Rule. *Id.* ¶ 24.

*72.*    Since 2016, the compliance officer has expended significant time and energy working to ensure compliance with reporting requirements that FinCEN had previously imposed under its GTOs. *Id.* ¶ 25. Based on that experience, the company has every reason to expect that the Final Rule will prove burdensome and time-consuming. *Id.*

73.    Under the Final Rule, the compliance officer will have to train and continuously oversee employees who are interfacing with clients to ensure that they are appropriately gathering information on reportable transactions. *Id.* ¶ 26.

74.    East Texas Title employees will have to gather information and make a determination with each transaction as to whether it is a reportable transaction. *Id.* ¶ 27.

75.    If they determine it is a reportable transaction they must gather all categories of required information under the Final Rule, even if such inquiries may seem cumbersome, unnecessary, or invasive to their clients. *Id.* ¶ 28.

76.    By FinCEN's estimates, East Texas Title will spend "an average" of two hours for each reportable transaction in collecting and reviewing information, and an "average 30 minute[s]" of additional time in filing reports. Final Rule, 89 Fed. Reg. at 70286.

77.    East Texas Title must compensate its hourly employees for the time they spend gathering required information, preparing, and filing Real Estate Reports, and managing required document retention policies. Ex. A, Flowers Decl. ¶ 29.

78.    East Texas Title has already spent time reviewing FinCEN's draft Real Estate Report form. *Id.* ¶ 21. That form would require the company to collect information as needed to fill-in up to 111 different fields for each report. Ex. B, Real Estate Report Summary of Data Fields, included as appendix to Agency Information Collection Activities; Proposed Collection; Comment Request; Real Estate Reports, 89 Fed. Reg. 89700, 89705–16 (Nov. 13, 2024).

79.    East Texas Title will also have to expend money and resources in maintaining a document retention policy for any written certifications relied upon when preparing and filing Real Estate Reports. Ex. A, Flowers Decl. ¶ 29.

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

80.    East Texas Title has a significant interest in whether the Final Rule was lawfully promulgated.

81.    The Final Rule will impose significant ongoing regulatory obligations that hinder and burden its business. *Id.* ¶¶ 25–29.

82.    A decision declaring the Final Rule unlawful would remedy these injuries by enabling East Texas Title to carry on its business free from burdensome information gathering and federal reporting requirements.

83.    East Texas Title has no plain, speedy, or adequate remedy at law for its injuries. Money damages are not available in this case.

84.    This case is currently justiciable because the Final Rule was published in the Federal Register on August 29, 2024, and will soon become effective on December 1, 2025.

85.    Therefore, declaratory and injunctive relief are appropriate to resolve this controversy.

### Count I
### The Final Rule Exceeds Statutory Authority
### (Violation of 31 U.S.C. §§ 5318(a)(2) and (g); 5 U.S.C. § 706(2)(A)(C))

86.    The preceding paragraphs are incorporated herein by reference.

87.    Absent an exemption in the regulatory text, the Rule deems all non-financed residential real estate transactions suspicious and subject to mandatory reporting requirements under 31 U.S.C. § 5318(g).

88.    The Rule exceeds statutory authority because 31 U.S.C. § 5318(g) does not authorize systematic reporting rules.

89.    31 U.S.C. § 5318(g) only authorizes reporting rules for specific transactions for which there is an individualized reason for suspecting a potential violation of law or regulation.

90.    The Rule also asserts that Congress delegated authority to mandate reporting of non-financed residential real estate transactions under 31 U.S.C. § 5318(a)(2).

91.    31 U.S.C. § 5318(a)(2) does not delegate authority to promulgate substantive reporting requirements, as claimed in the Final Rule.

92.    The Rule is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

### Count II
### The Bank Secrecy Act Impermissibly Delegates Legislative Power
### (U.S. Const. art. I, § 1 and 5 U.S.C. § 706(2)(B))

93.    The preceding paragraphs are incorporated herein by reference.

94.    The U.S. Constitution vests all lawmaking powers in Congress. The Constitution likewise prohibits Congress from delegating its lawmaking powers.

95.    When passing a law, therefore, Congress must make the fundamental policy decisions with which the law is concerned and leave to the Executive Branch only the job of filling in less consequential details or applying the law to a given set

17

of facts. In other words, Congress must provide a sufficiently intelligible governing principle.

96.    31 U.S.C. § 5318(a)(2) authorizes the Secretary to require financial institutions to collect information and file reports "as the Secretary of Treasury may prescribe by regulation." This authority provides no intelligible principle for determining whether or when to require reports on transfers of real estate.

97.    31 U.S.C. § 5318(g) authorizes the Secretary to require reporting on "suspicious transactions relevant to a possible violation of law or regulation." This authority provides no intelligible principle for determining whether or when to require systematic disclosure of non-financed residential real estate transfers.

98.    Congress neglected to decide the important subject of whether and under what conditions businesses should be required to gather and report information on commonplace consumer transactions.

99.    The Rule was promulgated "contrary to constitutional right, power, privilege, or immunity[,]" in violation of 5 U.S.C. § 706(2)(B).

### Count III
### The Bank Secrecy Act's Regulation of Purely Intrastate Commerce Exceeds Congress's Enumerated Powers
### (U.S. Const. art. I, § 1 and 5 U.S.C. § 706(2)(B))

100.    The preceding paragraphs are incorporated herein by reference.

101.    The Administrative Procedure Act directs the Court to "hold unlawful" and "set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B).

102.   Article I, section 1, of the Constitution, vests in Congress only the "legislative Powers herein granted[.]" U.S. Const. art. 1, § 1.

103.   Article I, section 8, clause 3 of the Constitution, enumerates Congress's legislative powers, including the power "[t]o regulate Commerce . . . among the several States[.]" U.S. Const. art. 1, § 8, cl. 3.

104.   The Tenth Amendment confirms that any "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

105.   Neither Section 5318(a)(2), nor Section 5318(g), include any provision limiting reporting requirements to transactions in interstate commerce.

106.   Nor does 31 U.S.C. § 5312(a)(2) (defining "financial institution") include any limitation restricting the Secretary to regulating interstate commerce.

107.   Accordingly, Sections 5318(a)(2) and (g) authorize the mandated reporting of purely intrastate activity (if any activity) and exceed Congress's power to regulate commerce among the states.

108.   The Bank Secrecy Act violates the Commerce Clause both facially and as applied to intrastate real estate transfers, including as between Texas residents using Texas financial institutions for wire transfers.

109.   East Texas Title facilitates purely intrastate real estate transfers, including as between Texas residents using Texas financial institutions. Ex. A, Flowers Decl. ¶ 8.

110.   East Texas Title is not a federally insured institution. *Id.* ¶ 6.

111.    Sections 5318(a)(2) and (g) are also not a proper exercise of Congress's power under any other provision of the Constitution.

112.    The Final Rule was promulgated under provisions of the Bank Secrecy Act that exceed Congress's power to regulate interstate commerce as applied to East Texas Title, and in contravention of the Tenth Amendment. As such, the Final Rule was promulgated "contrary to constitutional right, power, privilege, or immunity," in violation of 5 U.S.C. § 706(2)(B).

**Count IV**
**The Final Rule Violates the Fourth Amendment**
**(U.S. Const. amend. IV and 5 U.S.C. § 706(2)(B))**

113.    The preceding paragraphs are incorporated herein by reference.

114.    The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures" of "persons, houses, papers, and effects." U.S. Const. amend. IV.

115.    Business records are "papers" within the meaning of the Fourth Amendment. The Final Rule's reporting requirement effects warrantless, physical, trespassory searches by requiring the production, to FinCEN, of papers containing information that the agency compels reporting persons and entities to gather.

116.    No legal doctrine renders this compelled transfer of private information directly to the government a non-search.

117.    The information that East Texas Title is required to collect and to file Real Estate Reports on is not provided voluntarily.

118.    The information that East Texas Title is required to collect and to file Real Estate Reports on is not shared in the ordinary course of business.

20

119.   No judicially recognized warrant exception renders the Rule's compelled, warrantless searches reasonable.

120.   The Rule compels East Texas Title's participation in FinCEN's trespassory searches of its papers—and of its clients' papers—in violation of the Fourth Amendment.

121.   The Rule compels similarly situated persons and entities to participate in FinCEN's trespassory searches of their papers in violation of the Fourth Amendment.

122.   The Rule is contrary to the U.S. Constitution's Fourth Amendment within the meaning of 5 U.S.C. § 706(2)(B).

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1.   A declaratory judgment, pursuant to 28 U.S.C. § 2201, holding 31 U.S.C. § 5318(a)(2) and (g) unconstitutional;

2.   An order, pursuant to 5 U.S.C. § 706(2), holding unlawful and setting aside the Rule;

3.   An injunction, pursuant to 28 U.S.C. § 2202, prohibiting Defendants from enforcing the Rule against Plaintiff;

4.   An award of reasonable attorney fees and costs to Plaintiff, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

21

5.      Any other relief the Court deems just and proper.

**DATED:** July 15, 2025.

<u>s/ *Luke A. Wake*</u>
LUKE A. WAKE*
Cal. Bar No. 264647
JOSHUA P. THOMPSON
Cal. Bar No. 250955
AMY L. PEIKOFF*
Cal. Bar No. 220174
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
JThompson@pacificlegal.org
LWake@pacificlegal.org
APeikoff@pacificlegal.org

MOLLY E. NIXON*
N.Y. Bar No. 5023940
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
MNixon@pacificlegal.org

Attorneys for Plaintiff

*Pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on July 15, 2025, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will send notice of this submission to all counsel of record.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the District Court's CM/ECF system.

*s/ Luke A. Wake*
LUKE A. WAKE*

*Attorney for Plaintiff*
***Pro hac vice***